**Original filed 5/12/06**

# NOT FOR CITATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL L. ROBERTS, | No. C 04-1333 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| JOE McGRATH, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for assault with a deadly weapon (Cal. Penal Code §245 (A)(1)) and felony vandalism (Cal. Penal Code §594 (B)(1)). The trial court found Petitioner had one prior felony "strike" conviction and two prison priors. On July 7, 2002, Petitioner was sentenced to nine years and four months in state prison. The state appellate court affirmed the judgment in 2003. The state supreme court denied a petition for review on October 15, 2003. Petitioner sought collateral relief by filing three habeas petitions in the state supreme court. All of these petitions were denied as of

2004. Petitioner filed the instant petition on April 6, 2004.

Petitioner alleges the following claims for habeas relief: (1) the trial court's failure to instruct on a lesser-included offense of tampering with a vehicle violated his right to due process; (2) the trial court's failure to give a cautionary instruction to the jury sua sponte violated his right to due process; and (3) there was insufficient evidence to support the conviction of assault with force likely to produce great bodily injury.

This Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. After reviewing the papers and the relevant portions of the record, the Court concludes that Petitioner is not entitled to habeas corpus relief based on the claims presented and will deny the petition.

## I. FACTS

The California Court of Appeal found the facts to be as follows:

> On the early afternoon of December 1, 2001, Abraham Rodriguez was driving north in the rain on El Camino Real with his girlfriend, Sara Dayne. Rodriguez testified that he signaled, looked in the rear view mirror, and changed lanes. When Rodriguez stopped at a red light, the car behind him pulled up close to his bumper and started flashing its lights. The driver, later identified as Petitioner, was also honking his horn and throwing his hands up and down. Rodriguez ignored him, and continued talking with his girlfriend.
>
> When the traffic light changed, Petitioner pulled up very close to the side of Rodriguez's car, making obscene hand gestures. Rodriguez responded by extending his middle finger. Petitioner skidded to a stop, cutting Rodriguez off, and got out of his car. He pounded on the hood of Rodriguez's car, screaming that nobody sticks their middle finger at him and gets away with it. Rodriguez described Petitioner as extremely upset. As Petitioner reached for the door handle, Rodriguez cracked open his door to tell Petitioner to calm down, get back in his car and leave. Petitioner cursed Rodriguez, balling up his fists and challenging him to get out of his car and fight. Petitioner also spat on the window. Rodriguez

remained in his car, comforting his crying girlfriend.

Rodriguez tried to drive away, while Petitioner was standing behind the car and he heard something break. Rodriguez got out of the car and walked back to find his rear windshield broken and Petitioner jumping up and down, inviting him to fight. When Rodriguez said, "You broke my window," Petitioner yelled, "Yeah. Now I'm going to break your face." With his fists up like a boxer, Petitioner came at Rodriguez and hit him in the face. Both men fell to the ground throwing punches, as Rodriguez tried to defend himself. Rodriguez was able to get away, but Petitioner continued to pursue him, pulling off his own shirt. As Rodriguez continued to back away, Petitioner kicked his hand.[1] It was only when the police arrived that Petitioner stopped pursuing Rodriguez. Rodriguez suffered a bloody nose, a cut lip, bruises and other injuries to his hands, and a swollen face. He went to the emergency room for stitches and x-rays after talking with police. Photos of his injuries were admitted in evidence. The repair to his car window cost $426.40.

Dayne testified that she saw Petitioner's car skid to a stop as he yelled angrily from inside. She saw Petitioner stick up his middle finger, and Rodriguez return the gesture, saying, "Fuck you." Petitioner leaped out of his car and came to Rodriguez's door, saying: "Get out of the car. I'm going to fuck you up." Petitioner had his fists up, ready to fight. Dayne was scared, and told Rodriguez to stay in the car. She also saw Petitioner spit on the car. She heard Rodriguez tell Petitioner he was lucky his girlfriend was in the car, and Petitioner was not worth fighting.

As Rodriguez started to drive away, Dayne heard a popping sound and saw that the back window had shattered. She saw Petitioner standing behind the car, still challenging Rodriguez to get out. When Rodriguez told Petitioner, "You just broke my fucking windshield," Petitioner responded, "Now I'm going to break your fucking face." After Dayne got out of the car, she saw Petitioner swinging at Rodriguez as Rodriguez backed away. She saw blood on Rodriguez's face and a cut on his finger. Although she saw them separate several times, Petitioner continued to go after Rodriguez repeatedly.

Two passengers in nearby cars also observed the incident. Eleanor Makhlouf saw Petitioner stop his car abruptly and run over to the driver's side of Rodriguez's car, moving his fists and yelling: "get out and fight like a man in front of your woman." She testified that Rodriguez "was just shaking his head like, what's wrong with you man?" Makhlouf saw Petitioner hit the hood of Rodriguez's car, then run around the back and hit the trunk and the antenna. She

---

[1] On cross-examination, Rodriguez stated that he was not sure whether the kick actually struck him.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Roberts333den        3

saw the back window "just shattered completely." There was no one else nearby. When Rodriguez got out of his car, Makhlouf saw Petitioner put up his fists and swing at him. She saw Petitioner hit Rodriguez in the face, and watched Rodriguez hit back to defend himself. She also saw Petitioner pull Rodriguez to the ground. When Rodriguez broke away, Petitioner went after him again as Rodriguez ran in circles trying to escape, saying he didn't want to fight. Makhlouf saw Petitioner hit Rodriguez again in the face before the police arrived.

Leena Prasad also saw Petitioner approach Rodriguez's car, yelling and upset. Petitioner was raising his hands in the air before he took his shirt off in the rain. Prasad saw Petitioner hit Rodriguez five or six times with closed fists as Rodriguez tried to back away. Prasad also saw Petitioner punch down on the rear car window, although she could not see whether the window was broken.

Petitioner testified he had been convicted of felonies in 1991, 1995, and 1998. Rodriguez cut in front of him without signaling, causing him to brake suddenly, stopping about nine to twelve feet away. Rodriguez made him nervous because he was looking at him, and Petitioner tried to turn into a nearby parking lot.[2] Petitioner denied making hand gestures at Rodriguez, but admitted honking loudly. He saw Rodriguez's digital gesture and became upset. Petitioner felt threatened and scared, but got out of his car and ran over to tell Rodriguez not to drive that way. Petitioner admitted swinging his hands around and acknowledged "being the aggressor... in that circumstance." Petitioner testified: "I guess it was a stupid thing to do, you know. But I was upset. I was really upset." Petitioner did not recall challenging Rodriguez to fight or to get out of the car, but might have spat at him. Petitioner testified he was returning to his own car to leave when he heard Rodriguez's door open and then shut twice. Petitioner returned to Rodriguez's car, swearing at him and telling him to leave. As Rodriguez started to drive away, Petitioner thought he was going to be hit.

Now Petitioner was "really, really upset" and "just really, really angry." Petitioner testified he "found it very hard to control [his] behavior at that point." He "felt things were accelerating at a really bad pace." He wanted to leave, but he was walking towards Rodriguez's car. He "gues[sed his] anger had taken the best of [his] control out of [him]." Petitioner turned again to leave, but then saw Rodriguez get out of his car. At that point, Petitioner saw Rodriguez's rear window "just...fall in." He heard Rodriguez yell something about his window and Rodriguez walking toward him. Petitioner stood in front of his own car to protect it. Petitioner testified he put up his arms to defend himself and Rodriguez hit him, knocking him to the ground. Petitioner may have hit Rodriguez once when they were on the ground. Petitioner did not have a clear recollection of the fight. He

---

[2] Petitioner later described Rodriguez as smiling "satanically."

had taken off his shirt because it was new and he was afraid it was damaged. He tried to call 911, but a bystander told him the police were already on their way. Petitioner admitted his body language "was pretty offen[sive]... [and] intimidating," and described kicking at Rodriguez to keep him away. He denied ever hitting the hood, trunk, antenna, or back window of Rodriguez's car and claimed he was seven to fifteen feet away when the window shattered. He did not understand how it broke, but thought it might have been caused by the car door slamming. He denied chasing after Rodriguez or following him as he backed away.

Respondent's Exh. A (Unpublished Opinion of California Court of Appeal, First Appellate District, People v. Michael Lawrence Roberts , A100021, July 31, 2003) at 1-5.

## II.  DISCUSSION

**A.     Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

For purposes of 28 U.S.C. § 2254(d)(1), "clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). In other words, it is "the governing legal principle or principles set forth by the Supreme Court at the time the state

court renders its decision." Lockyer v. Andrade, 123 S. Ct. 1166, 1172 (2003). A state court decision may be "contrary to" clearly established federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-413.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The relevant inquiry is not whether the state court applied the law erroneously or incorrectly, but "[r]ather that application must be objectively unreasonable." Lockyer, 123 S. Ct. at 1175. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Williams, 529 U.S. at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer, 123 S. Ct. at 1175.

On a petition for habeas corpus, a federal court looks to the decision of the highest state court to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. LaJoie v. Thompson, 217 F.3d 663, 669, n.7 (9th Cir. 2000); see, e.,g., Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (treating state court referee's report as the last reasoned state court decision,

where report was summarily adopted by the Court of Appeal and petition for review to California Supreme Court was denied without comment); Packer v. Hill, 291 F.3d 569, 578-79 (9th Cir. 2002) (where state supreme court denied habeas petition without comment, looking to last reasoned decision of a state court as the basis of the state court's judgment), rev'd on other grounds, 123 S. Ct. 362 (2002). It also looks to any lower court decision examined or adopted by the highest state court to address the merits. See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant); Collins v. Rice, 348 F.3d 1082, 1087 (9th Cir. 2003) (where state appellate court adopted reasons cited by trial court, federal review necessarily includes discussion of trial court decision as well).

Under U.S.C. § 2254(d)(2), a federal court may grant the habeas writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(2)(2). The court must presume correct any determination of a factual issue made by a state court unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

    **1.  Failure to Instruct on Lesser-Included Offense of Tampering With a Vehicle.**

Petitioner first claims that the trial court's failure to instruct on a lesser-included offense of tampering with a vehicle violated his right to due process. Petitioner contends

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Roberts333den         7

that under the accusatory pleading test, Petitioner could not have violated Penal Code section 594 without also violating Vehicle Code section 10852. Petitioner maintains that the jury could have convicted him of tampering with a vehicle, instead of the more serious crime of vandalism, if it had found that he acted without malice.[3]

Failure to instruct on a lesser-included offense in a capital case is constitutional error if there was evidence to support the instruction. See Beck v. Alabama, 447 U.S. 625, 638 (1980); Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).[4] However, the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998); Turner, 63 F.3d at 819 (citing Bashor v. Riley, 730 F.2d 1228, 1240 (9th Cir.), cert. denied, 469 U.S. 838 (1984)); cf. Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir. 1986) (where evidence supports lesser-included-offense instruction in capital case, due process requires that court

---

[3] California Penal Code section 594 provides, in relevant part: "(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism: [¶] (§)(1) Defaces with graffiti or other inscribed maters. [¶] (§)(2) Damages. [¶] (§)(3) Destroys. [¶] . . . [¶] (§)(b)(1) If the amount of defacement, damage, or destruction is four hundred dollars ($400) or more, vandalism is punishable by imprisonment in the state prison or in a county jail not exceeding one year, or by a fine of not more than ten thousand dollars ($10,000)...."
California Vehicle Code section 10852 provides: "No person shall either individually or in association with one or more persons, wilfully injure or tamper with any vehicle or the contents thereof or break or remove any part of a vehicle without the consent of the owner."

[4] It appears that Beck may not even apply to capital cases in California because California, unlike the State of Alabama in Beck, has not "'erected an artificial barrier that restrict[s] its juries to a choice between conviction for a capital offense and acquittal.'" Anderson v. Calderon, 232 F.3d 1053, 1082 (9th Cir. 2000) (quoting Hopkins v. Reeves, 524 U.S. 88, 96 (1998)).

give instruction sua sponte), cert. denied, 479 U.S. 1054 (1987).  Even so "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule."  Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240).  Solis suggests that there must be substantial evidence to warrant the instruction on the lesser included offense.  See Solis, 219 F.3d 929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice); see also Cooper v. Calderon, 255 F.3d 1104, 1110-11 (9th Cir. 2001) (no duty in death penalty case to instruct on second degree murder as a lesser included offense because the evidence established that the killer had acted with premeditation, so if the jury found that the defendant was the killer, it necessarily would have found that he committed first degree murder).

     Under Bashor, the refusal by a court to instruct a jury on lesser included offenses, when those are consistent with Petitioner's theory of the case, may give rise to a cognizable habeas claim.  Bashor, 730 F.2d at 1240.  However, Petitioner fails to show that the evidence at trial was sufficient to support an instruction on tampering, or that any prejudice resulted from the trial court's failure to give such instruction.  The issue in dispute was whether Petitioner broke the windshield or did not.  The appellate court recognized that the jury resolved the credibility contest in favor of Rodriguez, his girlfriend, and the other eyewitnesses.  The court found that it was not reasonably probable that the jury would have convicted Petitioner of tampering with a vehicle instead of

vandalism. Since Petitioner testified that he did not touch the glass, the instruction on tampering would not support his defense, because the elements of tampering under Vehicle Code section 10852 include willfully injuring any vehicle.

The state appellate court found that the malice required to violate section 594 "import[s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act."[5] Ex. A. at 6 (citing to Cal. Pen. Code §7(4)). Although Petitioner contends that there is no direct evidence that he intended to break Rodriguez's window with his hand, the record overwhelmingly supports the jury's verdict that Petitioner acted with malice. The issue presented to the jury was whether Petitioner acted with malice or did not act at all. Because there was sufficient evidence to support that Petitioner acted with malice pursuant to § 594, Petitioner's claim is without merit.

Additionally, Petitioner fails to show any prejudice. This Court concludes that the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1),(2).

**2. The Trial Court's Failure to Give a Cautionary Instruction to the Jury Sua Sponte Pursuant to CALJIC No. 2.71.**

Next, Petitioner alleges that the trial court erred in failing to provide a cautionary instruction to the jury sua sponte by failing to include the last sentence of the jury

---

[5] The willfulness required by Vehicle Code section 10852 by contrast, "does not require any intent to violate the law, or to injure another, or to acquire any advantage." Ex. A at 6, n. 5 (citing to Cal. Pen. Code §7 (1)).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Roberts333den          10

instruction on admissions pursuant to CALJIC No. 2.71.[6]

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). See, e.g., Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination, not open to challenge on federal habeas review); Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987) (failure to define recklessness at most error of state law where recklessness relevant to negate duress defense and government not required to bear burden of proof of duress), cert. denied, 488 U.S. 926 (1988). Nor does the fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards mean that a Petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction. See Duckett v. Godinez, 67 F.3d 734, 744 (9th Cir. 1995) (citing Estelle, 502 U.S. at 71-72), cert. denied, 517 U.S. 1158 (1996).

To obtain federal collateral relief for errors in the jury charge, a Petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional

---

[6] CALJIC No. 2.71 states:"An admission is a statement made by [a] [the] defendant which does not by itself acknowledge [his] [her] guilt of the crime[s] for which the defendant is on trial, but which statement tends to prove [his] [her] guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether the defendant made an admission, and if so, whether the statement is true in whole or in part. [¶] [Evidence of an oral admission of [a] [the] defendant not made in court should be reviewed with caution.]"

right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir.), cert. denied, 488 U.S. 861 (1988); see e.g., Middleton v. McNeil, 541 U.S. 433, 434-35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law). Finally, the defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Estelle v. McGuire, 502 U.S. at 73.

The state appellate court observed that the record did not clearly explain why the last part of the jury instruction was omitted. The court therefore assumed that the omission was erroneous, but it concluded that no prejudice was shown under the circumstances. Exh. A at 7 (citing to People v. Beagle 6 Cal.3d 441, 455 (1972)). It determined that "the purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made." Ex. A at 7 (citing to Beagle, 6 Cal.3d at 456). Petitioner refers to his response after Rodriguez's complaint that Petitioner had broken his windshield: "Yeah. Now I'm going to break your face." Petitioner contends that this statement was highly prejudicial, thus the jury should have been instructed to view it with caution. However, Rodriguez and Dayne testified that they heard Petitioner's

statement, and there was no direct evidence in conflict by other witnesses who observed various aspects of the altercation. Exhibit A at 7.

Here, the jury was instructed separately on factors affecting a witness's credibility and told that the defendant may not be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by the defendant. Additionally, the jury was instructed on the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt. The state appellate court found that the instructions given "adequately informed the jury of its duty to determine the believability of the witness[es] and each part of [their] testimony and the weight to which the testimony was entitled." Ex. A at 7 (citing to People v. Shoals, 8 Cal. App. 4th 475, 499 (1992)). The court concluded that it was not reasonably probable that the jury would have reached a result more favorable to Petitioner had the final sentence of CALJIC No. 2.71 been included in the jury instruction. Ex. A at 7 (citations omitted).

Based upon the record, the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1),(2).

**3. Insufficient Evidence to Support the Conviction of Assault with Force Likely to Produce Great Bodily Injury.**

Finally, Petitioner alleges that the evidence presented at trial was insufficient to convict him of using force likely to produce great bodily injury pursuant to Cal. Pen. Code § 245 (a)(1). Petitioner's contention on direct appeal was that "simply fighting with hands and fists in a road rage incident, causing minor injuries does not suggest that [Petitioner]

used force likely to cause great bodily injury." Resp. Exhibit B (Petitioner's Petition for Review to California Supreme Court, S118483) at 18.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).[7] A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979),[8] which, if proved, entitles him to federal habeas relief, see id. at 324; see, e.g., Wigglesworth v. Oregon, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of allowing lab reports regarding drug analyses to be admitted into evidence without authenticating testimony relieved state of its burden to prove beyond reasonable doubt all elements of crime charged); Martineau v. Angelone, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to convict defendants of child abuse based on delay in seeking medical care for child).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 US 843 (1993). The

---

[7] Cf. Fiore v. White, 531 U.S. 225, 228-29 (2001) (due process violated where basic element of crime not proven because statute did not prohibit defendant's conduct).

[8] It is unreasonable to make a Petitioner plead all facts proven at trial and argue that they were insufficient to support the verdict. An allegation that the evidence was insufficient to prove beyond a reasonable doubt an element of the crime is sufficient to warrant service of the petition. See Williams v. Kullman, 722 F.2d 1048, 1051 (2d Cir. 1983).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Roberts333den            14

federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal habeas court to revisit credibility determinations. See id. (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrong doing not a basis for revisiting jury's obvious credibility determination); see also People of the Territory of Guam v. McGravey, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). Mere suspicion and speculation cannot support logical inferences, however. Id.; see, e.g., Juan

H. v. Allen, 408 F.3d 1262, 1278-79 (9th Cir. 2005) (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported Petitioner's conviction for first degree murder under a theory of aiding and abetting).

After AEDPA, a federal habeas court applies the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. 1275 (quoting 28 U.S.C. § 2254(d)).[9]

The California Court of Appeal recognized that "it is well-established that the use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury. . . Nor is actual bodily injury a necessary element of the crime, and the extent of any injury is not determinative." Ex. A at 7 (citations omitted).

California applies the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). See People v. Rodriguez, 20 Cal.4th 1, 11 (1999). In applying this standard, the appellate court concluded that Petitioner's conduct, consisting of "kicking Rodriguez in the hand and hitting him repeatedly in the face with closed fists during an episode of 'road rage,' was sufficient to support his conviction for assault by means of force likely to cause great bodily injury." Ex. A at 8.

---

[9] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir.2004) (en banc); Bruce v. Terhune, 376 F.3d 950, 956-57 (9th Cir. 2004). But in Juan H., the court concluded that "the Supreme Court's analysis in Williams compels the conclusion that the state court's application of the Jackson standard must be '"objectively unreasonable."'" Juan H., 408 F.3d at 1275 n.13 (quoting Williams v. Taylor, 529 U.S. 362, 409 (2000)).

Petitioner's conduct clearly demonstrated that his use of force was likely to cause great bodily injury.  Thus, the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

### III.  CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying action.  Accordingly, the petition for writ of habeas corpus is denied.  The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: __5/12/06_____

_____
JEREMY FOGEL
United States District Judge

This is to certify that a copy of this ruling was mailed to the following:

Michael L. Roberts
P-44841
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532-7500


Stan M. Helfman
CA State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-7004

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.04\Roberts333den                    18